IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RATTLER HOLDINGS, LLC D/B/A PLANETARY DESIGN,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC. and UPS SUPPLY CHAIN SOLUTIONS, INC.,<br><br>Defendants. | CV 20–117–M–DLC<br><br>ORDER |

Before the Court is Defendants' Motion to Dismiss Under the Doctrine of Forum Non Conveniens or Alternatively Rule 12(b)(6). (Doc. 8.) On December 3, 2020, the Court held a hearing on this motion. As explained below, the motion is granted.

## BACKGROUND[1]

Plaintiff Rattler Holdings, LLC d/b/a/ Planetary Design brought this action against Defendants United Parcel Service, Inc. and UPS Supply Chain Solutions ("SCS"), Inc. alleging negligence, constructive fraud, and negligent misrepresentation. (Doc. 4.) Plaintiff sells travel French presses, drinkware, and

[1] Solely for the purpose of resolving this motion, the allegations contained in Complaint are taken as true.

other coffee supplies. (*Id.* at 2.) Defendants are an American multinational package delivery and supply company. (*Id.*) The dispute concerns a contract that Plaintiff executed with UPS SCS China ("UPS China") (who is not a party to this suit), a division of UPS SCS.

In the spring of 2017, Plaintiff contacted its UPS representative to explore the possibility of having its Chinese goods shipped directly from China to its international customers. (*Id.* at 2–3.) If possible, the deal would eliminate the extra costs and time associated with having all internationally bound Chinese-goods sent first to Plaintiff's Montana warehouse. (*Id.*) Over the next few months, representatives from UPS worked with Plaintiff to establish warehouse and shipping services from China. (*Id.* at 3.) These conversations resulted in Plaintiff executing a Logistics Services Agreement ("LSA") with UPS China. (*Id.* at 4.)

After signing, Plaintiff moved its goods to UPS China's warehouse and authorized purchase orders from international customers based on the LSA. (*Id.*) However, these goods were never shipped. (*Id.*) A representative from UPS initially informed Plaintiff that the shipments were delayed due to overbooking. (*Id.* at 5.) Months later, Plaintiff was informed that UPS China was unable to export its products and that shipping services were not covered under the LSA. (*See id.*) This did not, however, stop UPS China from sending Plaintiff a bill for its warehousing services. (*Id.* at 6.) Plaintiff ultimately terminated the LSA and

was then informed that it would not be able to recover its goods from UPS China's warehouse until it paid the outstanding invoices. (*Id.* at 6–7.) It is unclear whether these goods have yet been recovered.

Plaintiff sued Defendants alleging negligence, constructive fraud, and negligent misrepresentation, and claiming damages from lost sales, replacement orders, and the lost confidence of its customers. (*Id.* at 7–11.) Defendants brought this motion to dismiss invoking the LSA's forum selection clause which provides that any litigation "relating to" the agreement must be brought "in a court of competent jurisdiction in the location of the UPS SCS facility, of China in its sole jurisdiction[.]" (Doc. 10-1 at 6.)

**LEGAL STANDARD**

"[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Federal law applies to the interpretation of a forum selection clause. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)). Under federal law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable'[.]" *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). When a contract contains

a valid forum selection clause, a court must uphold the clause "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 52. These "extraordinary circumstances" exist only where:

> (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'

*Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019) (emphasis omitted) (quoting *Bremen*, 407 U.S. at 15). "[I]n all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine Const. Co.*, 571 U.S. at 66.

## DISCUSSION

Defendants seek dismissal of the suit by invoking the LSA's forum selection clause which specifies that any litigation related to the LSA must be brought in China. (Doc. 8.) Alternatively, Defendants assert dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6). (*Id.*) Because the Court concludes the forum selection clause is enforceable, it will not address Defendants' alternative argument.

Plaintiff initially argued that Defendants could not enforce the forum selection clause because they "are not likely" parties to the LSA. (Doc. 14 at 8–

10.) However, Plaintiff conceded at oral argument that Defendants are parties to the agreement and able to enforce its terms.[2] Plaintiff now asserts that the clause is unenforceable because it violates Montana's public policy. (*Id.* at 8.)

In response, attempting to avoid the Court's recent ruling in *Swank Enterprises Inc. v. NGM Insurance Co.*, 2020 WL 1139607 (D. Mont. Mar. 9, 2020), Defendants assert that Montana's public policy does not prohibit the type of claims raised in this suit. (Doc. 9 at 10.) Thus, there are two issues before the Court: (1) whether the claims raised in this lawsuit implicate Montana's public policy; and (2) if so, whether the forum selection clause is void.

**I. Montana's public policy encompasses the claims raised in this suit.**

Defendants acknowledge this Court's litany of cases addressing the enforceability of forum selection clauses under Montana law. Indeed, this issue is one the Court has addressed many times, albeit to contrary results. *Fayle v. TSYS Merch. Sols., LLC*, No. CV 20-72-M-DWM, 2020 WL 3604070, at *2–3 (D. Mont. July 2, 2020) (enforcing a forum selection clause upon concluding that the Montana Supreme Court's newer caselaw demonstrates that such clauses are not "presumptively void"); *Swank Enters., Inc.*, 2020 WL 1139607, at *5 (invalidating

[2] The LSA specifies that Plaintiff, UPS China, and each of UPS China's "affiliates" are all parties to the agreement. There is now no dispute that Defendants are an "affiliate" of UPS China.

a forum selection clause based on Montana's "unequivocally . . . 'strong public policy' against enforcement" of such clauses); *Bjorgen v. Marco Techs., LLC*, No. CV 17-134-M-DLC, 2018 WL 2023543, at *4 (D. Mont. May 1, 2018) (upholding a forum selection clause upon finding that Montana's public policy "is not so strong as to automatically invalidate a [valid] forum-selection clause[.]"); *Frontline Processing Corp. v. Merrick Bank Corp.*, No. CV 13-20-BU-JCL, 2013 WL 12130638, at *4 (D. Mont. May 29, 2013) (recognizing that Montana law does not invalidate all forum selection clauses); *Rindal v. Seckler Co. Inc.*, 786 F. Supp. 890, 894 (D. Mont. 1992) (invalidating a forum selection clause as contravening Montana's strong public policy). Attempting to avoid this Court's inconsistent caselaw, Defendants assert that the claims raised in this litigation do not implicate Montana Code Annotated § 28-2-708. (Doc. 9 at 10.)

This argument was muddled in the briefing and seemed to hinge on a distinction between Plaintiff's relationship with UPS China ("the primary party to the LSA") and Defendants (mere "affiliates" to the contract). (*See* Doc. 9 at 10.) As conceded by counsel at oral argument, Defendants *are* parties to the contract; therefore, the contract draws no meaningful distinction between Defendants and UPS China. Any argument tethered to the relationship between the parties fails.

Nevertheless, at oral argument, Defendants also clarified that the purported distinction does not hinge on the relationship of the parties but on the nature of

Plaintiff's claims. By raising negligence, negligent misrepresentation, and constructive fraud—and failing to raise breach of contract—Defendants argue that Plaintiff is not seeking to enforce rights that arise "under the contract" itself; rather, these rights arise more broadly under State law.

If § 28-2-708 were the only articulation of Montana's public policy, this close textual reading would arguably prevail. Section 708 provides "[e]very stipulation or condition in a contract by which any party to the contract is restricted from enforcing *the party's rights under the contract* by the usual proceedings in the ordinary tribunals . . . is void." Mont. Code Ann. § 28-2-708 (emphasis added). Rephrasing to apply here, the statute itself only voids forum selection clauses which restrict a party from enforcing "rights under the contract" in Montana. Defendants are correct insomuch as the rights Plaintiff seeks to enforce—rights to be free from tortious conduct—do not arise "under the contract," although their claims clearly "relate to" the contract. *Yei A. Sun*, 901 F.3d at 1086 (explaining "arising" from a contract means "relating to the interpretation and performance of the contract itself" and claims "relating to" a contract means "any disputes that reference the agreement or have some 'logical or causal connection' to the agreement" (internal citations omitted)). Nevertheless, as Plaintiff argues—and as *all* of this Court's relevant caselaw agrees—Montana's public policy pertaining to the enforcement of forum selection clauses is not

limited to § 28-2-708. It is codified, yes, but it is also contained in the Montana Supreme Court's caselaw. As Plaintiff aptly observes, Defendants' textual argument fails because it does not square with the Court's broader treatment of forum selection clauses. At oral argument, Plaintiff noted two additional sources from which Montana's public policy springs: its caselaw and its Constitution.

In one of the Court's earliest treatments of the issue, it explained that § 28-2-708 codifies two distinct purposes: "(1) to protect Montana residents from having to litigate outside of Montana; and (2) to invalidate pre-dispute arbitration agreements." *Keystone, Inc. v. Triad Sys. Corp.*, 971 P.2d 1240, 1243 (Mont. 1998). The Court recognized that this first purpose "reflects the fundamental public policy of this state to protect the 'substantive rights of Montana residents to seek redress in the courts of [Montana].'" *Id.* (quoting *Rindal*, 786 F. Supp. at 894 and citing *State ex rel. Polaris Indus., Inc. v. Dist. Court of Thirteenth Judicial Dist. In & For Yellowstone Cty.*, 695 P.2d 471 (Mont. 1985) in support). Although the distinction is perhaps subtle, the Court treated § 28-2-708 not as the originating source of Montana's public policy, but as the mechanism by which its fundamental public policy was carried out.

The Court's citation to *Polaris* further bolsters this notion. The *Polaris* Court held that § 28-2-708 "rendere[d] the forum selection clause [at issue] void," as "an improper restraint upon the plaintiff's exercise of its rights." *Polaris Indus.*,

*Inc.*, 695 P.2d at 472. And while the majority opinion did not attribute the source of the improper restraint as anything other than § 28-2-708, Justice Sheehy's concurring opinion found broader support for that position by looking to Montana's Constitution and Montana's long-arm statute. *Id.* (Sheehy, J., concurring).

Montana's Constitution provides that its "courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property or character." *Id.* (citing Mont. Const. art. II, § 16). Justice Sheehy concluded that forum selection clauses thwart this provision by "imped[ing] the right to judicial process and especially discourag[ing] a speedy remedy." *Id.* Additionally, he looked to Montana's long arm statute, which (at the time) subjected all out-of-state defendants with "substantial connection" to Montana to its court system—consistent with the United States Supreme Court's then-expanding notion of personal jurisdiction. *Id.* (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957). Where a contract provides a "substantial connection," over an out-of-state defendant but also contains a forum selection clause designating an out-of-state forum, Justice Sheehy believed that enforcing the clause "would be patently a step back from the [federal] cases affording . . . [personal] jurisdiction," over such defendants. *Id.* Although the Supreme Court has significantly narrowed the scope of personal jurisdiction in recent years, the concurrence can still be read for the

valid principle that Montana's expansive long-arm jurisdiction promotes its policy of holding its courthouse doors wide open to Montana plaintiffs—a policy that is undoubtedly constricted by the enforcement of forum selection clauses.

Additionally, as discussed more fully below, the Montana Supreme Court has more recently referenced its policy regarding forum selection clauses and did so without citation to § 28-2-708. *See Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476 (Mont. 2008); *Milanovich v. Schnibben*, 160 P.3d 562, 563 (Mont. 2007). These cases further indicate that Montana's relevant public policy is considerably broader than its codification at § 28-2-708.

For this reason, the Court rejects Defendants' argument that the precise circumstances here are not addressed by Montana's public policy. Admittedly, the Montana Supreme Court does not appear to have addressed the enforceability of a forum selection clause where a plaintiff raises only related tort claims and brings no breach of contract claim. However, there is no indication in any of Montana's caselaw that its public policy is restricted to litigation involving a breach of contract. Rather, the question is whether Montana's public policy is so hostile to the enforcement of forum selection clauses as to overcome the federal presumption that clauses are a valid exercise of a party's right to contract.

## II. Montana's public policy does not invalidate all forum selection clauses.

Plaintiff argues this issue was "all but decided" by the Ninth Circuit and resolved by this Court in *Swank Enterprises*. (Doc. 14 at 11.) In *Gemini*, the Ninth Circuit invalidated a forum selection clause based on Idaho's public policy as articulated in an Idaho statute that reads much like Montana's. *Gemini Techs., Inc.*, 931 F.3d at 917. Idaho's statute provides: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals . . . is void as it is against the public policy of Idaho."[3] *Id.* at 916. The court held that the specific reference to "public policy" within the statute "clearly" conveyed Idaho's "strong public policy" that forum selection clauses are void in Idaho. *Id.* This alone was enough for the court to conclude that Idaho's public policy outweighed the federal presumption that forum selection clauses are valid. *Id.*

The court went on to rebut the concern that its holding undermined federal law by "making the invalidation of forum selection clauses 'routine rather than extraordinary'." *Id.* The court noted that it was aware of only a handful of other states that had comparable statutes—Montana being one of them. *Id.* However,

[3] Compare with Montana's statute, entitled "Restraints upon legal proceedings void" which reads: "Every stipulation or condition in a contract by which any party to the contract is restricted from enforcing the party's rights under the contract by the usual proceedings in the ordinary tribunals . . . is void." Mont. Code Ann. § 28-2-708.

the court "expressed no opinion" on whether Montana's statute "would render a forum-selection clause unenforceable[.]" *Id.*

Based on *Gemini* and the similarity between Idaho's statute and Montana's, in *Swank*, this Court broke from a relatively steady line of cases in concluding that Montana's "unequivocally . . . 'strong public policy'" renders all forum selection clauses in Montana void. *Swank Enters., Inc.*, 2020 WL 1139607, at *5. Today, the Court reconsiders that holding, and must admit it erred. As explained below, Montana's treatment of forum selection clauses has not been uniform, and a full examination of its caselaw compels the conclusion that its public policy is not so strong as to invalidate all forum selection clauses.

The primary difference between Idaho's public policy and Montana's does not lie in the text of the statutes—although, it is likely not irrelevant that Montana's statute never mentions the words "public policy" and Idaho's does. *See Fayle*, 2020 WL 3604070, at *3. The primary difference is that the Idaho Supreme Court has either never weighed in, or if it has, the Ninth Circuit was not aware of any such law when it decided *Gemini*. The court's decision in *Gemini* relied entirely on a textual interpretation of Idaho's statute. *See Gemini Techs., Inc.*, 931 F.3d at 916. In contrast, the Montana Supreme Court has addressed its public policy at least four times. *Swank* noted that two of these cases "amplified" the policy contained in § 28-2-708, *Swank Enters., Inc.*, 2020 WL 1139607, at *5, but

that does not end the matter. Notwithstanding Plaintiff's full-throated defense of *Swank*, the Court's analysis stopped short of giving full credit to the Montana Supreme Court's inconsistent caselaw.[4]

The Court's early caselaw is straightforward. First in *Polaris*, the Court rejected the defendant's attempt to transfer the case from Montana to Minnesota based on a forum selection clause contained in a sales agreement. *State ex rel. Polaris Indus., Inc.*, 695 P.2d at 472. With very little analysis, the Court reached the straightforward conclusion that § 28-2-708 rendered "the forum selection clause void." *Id.*

Next, in *Keystone*, decided in 1998, the Court reinforced its prior holding that § 28-2-708 "invalidates forum selection clauses that would have the effect of forcing Montana residents to litigate disputes outside of Montana" even though the Court actually determined Montana Code Annotated § 27-5-323 invalidated the parties' agreement to arbitrate any disputes in California. *Keystone, Inc.*, 971 P.2d at 1243–44.

However, in 2007 and 2008, the Montana Supreme Court abruptly shifted gear. *Frontline Processing Corp.*, 2013 WL 12130638, at *3. In *Milanovich*, the

---

[4] Moreover, when it comes to recognizing the public policy of a state, federal law places no preference on whether that public policy is articulated in statute or judicial opinion. *Gemini Techs., Inc.*, 931 F.3d at 915 (recognizing that under federal law, a forum-selection clause is controlling absent a strong showing that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision").

Supreme Court addressed whether a Montana court had personal jurisdiction over an out-of-state defendant by virtue of an employment contract that specified that any enforcement action must be brought in Montana. *Milanovich*, 160 P.3d at 564. After determining that there was no reason to find the forum selection clause "unreasonable" or "unenforceable," the Court determined that Montana courts had personal jurisdiction over the defendant. *Id.* at 564–65.

Subsequently, in *Polzin*, the Montana Supreme Court cited *Milanovich* for the proposition that Montana law does not invalidate all forum selection clauses. *Polzin*, 191 P.3d at 482. The *Polzin* Court primarily analyzed whether the parties' choice-of-law provision selecting Washington law governed the sales contract for the sale of a truck that broke down shortly after it was purchased. *Id.* at 480–81. The sales contract provided both a choice-of-law provision and a forum-selection clause that selected Spokane, Washington as the forum for litigating disputes. *Id.* at 480.

In addressing whether the Washington choice-of-law provision was valid, the Court considered the following three-part test: Under Montana law, a court will uphold the parties' choice of law provision unless: "(1) but for the choice of law provision, Montana law would apply under § 188 of the *Restatement*; (2) Montana has a materially greater interest in the particular issue than the parties chosen state; and (3) application of the chosen state's law would contravene a Montana

fundamental policy." *Id.* (citing *Modroo v. Nationwide Mutual Fire Insurance Company*, 191 P.3d 389, 400 (Mont. 2008)). In addressing the last element, the Court explained that the district court had incorrectly voided that provision and misstated the law when it determined that "choice of forum clauses are void as unconstitutional" in Montana. *Id.* Because the Court found other errors with the district court's analysis, it declined to "explain this error in depth[.]" *Id.* After determining that Washington law applied to the contract, the Court briefly addressed the final argument that the forum-selection clause itself was voided by Montana law. *Id.* The Court cited *Milanovich* in saying, "as previously noted, forum selection clauses are not presumptively void as against public policy." *Id.* at 482.

Plaintiff dismisses both *Polzin* and *Milanovich*, calling the Court's treatment of the forum selection clauses at issue dicta and criticizing those cases over the quality of the Court's reasoning. (Doc. 14 at 15–18.) Specifically, Plaintiff takes issue with the Court's reliance on federal law and failure to cite § 28-2-708. (*Id.*) As an initial matter, the Court does not agree that *Polzin* and *Milanovich* are distinguishable as dicta.

The Ninth Circuit defines a holding as a statement "germane to the eventual resolution of the case, . . . resolve[d] . . . after reasoned consideration in a published opinion." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001)

(Kozinski, C.J., concurring); *Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc) (adopting Judge Kozinski's definition in the majority opinion). Dicta is defined in opposition to a holding as that which is "inessential to the outcome." Ryan S. Killian, *Dicta and the Rule of Law*, 2013 Pepp. L. Rev. 1, 8 (2013). In *Milanovich*, the Court's pronouncement that the forum selection clause was valid was a necessary predicate to finding personal jurisdiction. Stated differently, the Court found personal jurisdiction over the out-of-state defendant *because* it found a valid forum selection clause in the contract. *Milanovich*, 160 P.3d at 565. Contrary to Plaintiff's suggestion, that conclusion is not "inessential" to the outcome and is therefore a part of the Court's holding.

It is similarly inappropriate to dismiss *Polzin* has pertaining only to the choice-of-law issue. The Court was presented with two issues side-by-side: whether the contract contained a valid choice-of-law provision and whether it contained a valid forum selection clause. *Polzin*, 191 P.3d at 480. Although the Court spent the bulk of its words upholding the parties' selection of Washington law, the Court resolved the forum selection clause issue with citation to *Milanovich*, stating "as previously noted, forum selection clauses are not presumptively void as against public policy." *Id.* at 482. This finding is therefore part of the Court's holding.

Plaintiff next takes issue with the thoroughness of the Montana Supreme Court's analysis in *Polzin* and *Milanovich*. Plaintiff urges the Court to disregard *Milanovich* because it relied on federal law when it determined that the forum selection clause at issue was valid. (Doc. 14 at 17.) For this reason, Plaintiff contends that *Polzin* erred in relying on *Milanovich* and not § 27-2-708 when it upheld its clause. (*Id.*) Plaintiff further argues that both cases contain an unpersuasive discussion of Montana's public policy because both failed to cite § 27-2-708. Although Plaintiff criticizes the quality of the Court's reasoning, a federal court cannot dismiss a decision issued by a State's highest court interpreting that States' public policy because it wishes the Court would have better explained the result.

The issue before the Court is an issue of state law[5]—and it is not this Court's job to rewrite the public policy of Montana based on a line edit of its Supreme Court decisions. Nor is the Montana Supreme Court's reliance on federal law to shape the public policy of the State inherently problematic. Rejecting Plaintiff's arguments, here is what's left: (1) a statute that strongly suggests all forum selection clauses are void in Montana; (2) two cases which support that conclusion;

[5] Although the enforceability of a forum selection clause is decided by interpreting federal law, *Doe 1*, 552 F.3d at 1081, the analysis of this issue hinges on the second prong of the federal test: whether "enforcement [of a forum selection clause] would contravene a strong public policy of the forum in which suit is brought," *Gemini Techs., Inc.*, 931 F.3d at 915 (quoting *Bremen*, 407 U.S. at 15), which requires this Court to look to state law—an area in which the Montana Supreme Court gets the final say.

and (3) and two (more recent) cases that hold to the contrary. This Court need not decide whether *Milanovich* and *Polzin* overruled *Keystone* and *Polaris* to resolve the issue today. Given Montana's inconsistent treatment of forum selection clauses, the Court holds that the strength of Montana's hostility towards them is not so strong as to overcome the federal presumption that such clauses are valid. *See Bremen*, 407 U.S. at 15 (a forum selection clause is prima facie valid and should control absent a "strong showing that it should be set aside").

The Court takes no pleasure in its conclusion. It does not seem irrelevant that most of the Montana Supreme Court's decisions (*Polaris*, *Keystone*, and *Milanovich*) resulted in the parties' being required to litigate their case in Montana—the exception being *Polzin*, which required the parties to litigate their case in Spokane, Washington, a mere seven hours' drive from Judith Basin County where the case was initially filed. The result here will require Plaintiff to litigate its case in China, a costly endeavor that counsel concedes Plaintiff is unlikely to pursue. This distinction is not, however, legally relevant. The federal test for the enforcement of a valid forum selection clause does not permit a court to consider the private inconvenience to the parties, *Atl. Marine Const. Co.*, 571 U.S. at 52, and the Montana Supreme Court's articulation of its public policy has never hinged on any distinction between a foreign or domestic choice of forum. Nor does Plaintiff pursue any such argument. Nevertheless, given the plain text of § 27-2-

708, the Court's early cases, and its lack of commentary upon changing course, the Court wonders if this case is not the textbook example of what Montana's public policy was trying to avoid, at least in its early years. Despite this concern, the Court must faithfully apply the law it is given. Therefore,

IT IS ORDERED that Defendants' Motion (Doc. 8) is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED without prejudice subject to the following conditions:

1. Defendants' agreement to: (1) submit to the jurisdiction of a Chinese court in an action refiled by Plaintiff there; (2) toll any statute of limitations that might apply to such refiled actions for 120 days after dismissal by this Court; and (3) pay any damages awarded by the Chinese courts in such refiled actions, subject to any right to appeal.

2. A Chinese court's acceptance of jurisdiction over all claims presently before this Court.

IT IS FURTHER ORDERED that if Plaintiff does not refile its case in a Chinese court within 120 days of this Order, Defendants may move for dismissal with prejudice.

DATED this 8th day of December, 2020.

Dana L. Christensen, District Judge
United States District Court